# Exhibit "25"

## SEVERANCE AND SETTLEMENT AGREEMENT AND GENERAL RELEASE

AGREEMENT made as of the 2nd day of September, 2014. by and between

ABRO MANAGEMENT, INC. as agent for the 4750 REALTY LLC ("4750") (ABRO

Management and 4750, hereinafter sometimes referred to as "ABRO" or the "Successor

Employer"), and SEFKET REDZEPAGIC (the "Employee"):

WHEREAS, the Employee was employed Melohn Properties ("Melohn") prior to

the Transaction described below;

WHEREAS, pursuant to a contract of sale between Melohn and 4750, executed

on April 4, 2014 (the "Contract of Sale"), 4750 agreed to purchase the premises known as 4750

Bedford Avenue, Brooklyn, NY 11215 (the "Building");

WHEREAS, on or about July 2, 2014 the transaction described in the Contract of

Sale was consummated (the "Transaction") and 4750 became the owner of the Building;

WHEREAS, as Successor Employer, ABRO, made legitimate, non-discriminatory

business decisions concerning the nature and size of the workforce with which it intended to

operate the Building after the Transaction occurred, including, without limitation, the

superintendent which it would hire in connection with building service operations;

WHEREAS, the Successor Employer chose to hire a superintendent with whom it

was familiar, commencing on July 3, 2014;

WHEREAS, as a result of its hire of a new superintendent, there no longer existed

a position of employment for the Employee, effective as of July 3, 2014;

WHEREAS, as a matter of fairness to the Employee, ABRO is willing to make a

severance payment to the Employee, in consideration of his execution of this Severance and



EXHIBIT
25
Redzepagic
1/8/16

MELOHN 00404
000040

Settlement Agreement and General Release and his vacating Unit LC in the Building the "Unit") which he currently occupies; and

WHEREAS, the parties are mutually desirous of executing this Severance and Settlement Agreement and General Release, thereby fully and finally resolving all disputes and claims which may exist between them regarding the Employee's employment and the termination thereof and the Employee's continuing occupancy of the Unit;

NOW, THEREFORE, the parties, intending to be legally bound, agree as follows:

1.     The Employee's Severance of Employment.

(a)     The Employee hereby confirms that his employment with Melohn ended for all purposes effective July 2, 2014 and the parties agree that ABRO shall have no obligation to employ or reemploy the Employee at any point in the future.  Accordingly, the Employee hereby relinquishes any and all rights to employment or reemployment with or by ABRO and agrees that he will not knowingly seek, accept or otherwise pursue employment therewith.

(b)     While the Employee, by virtue of his continued occupancy of the Unit through a date not later than September 9, 2014, may continue to reside in the Unit and occupy same, he expressly understands and agrees that he has no authority to act on behalf of ABRO or to bind it in any respect and that he is not authorized to perform any services for ABRO either as superintendent or in any other capacity at any time after July 2, 2014.

2.     Settlement Payment; Responsibility of Taxes; Indemnification;

(a)     In consideration for the Employee's execution of this Severance and Settlement Agreement and General Release, ABRO shall pay to the Employee in full and final settlement of all claims and  grievances the sum of Seventy-Five Thousand ($75,000)

Settlement Agreement and General Release and his vacating Unit LC in the Building the "Unit") which he currently occupies; and

WHEREAS, the parties are mutually desirous of executing this Severance and Settlement Agreement and General Release, thereby fully and finally resolving all disputes and claims which may exist between them regarding the Employee's employment and the termination thereof and the Employee's continuing occupancy of the Unit;

NOW, THEREFORE, the parties, intending to be legally bound, agree as follows:

1.    The Employee's Severance of Employment.

(a)    The Employee hereby confirms that his employment with Melohn ended for all purposes effective July 2, 2014 and the parties agree that ABRO shall have no obligation to employ or reemploy the Employee at any point in the future.  Accordingly, the Employee hereby relinquishes any and all rights to employment or reemployment with or by ABRO and agrees that he will not knowingly seek, accept or otherwise pursue employment therewith.

(b)    While the Employee, by virtue of his continued occupancy of the Unit through a date not later than September 9, 2014, may continue to reside in the Unit and occupy same, he expressly understands and agrees that he has no authority to act on behalf of ABRO or to bind it in any respect and that he is not authorized to perform any services for ABRO either as superintendent or in any other capacity at any time after July 2, 2014.

2.    Settlement Payment; Responsibility of Taxes; Indemnification;

(a)    In consideration for the Employee's execution of this Severance and Settlement Agreement and General Release, ABRO shall pay to the Employee in full and final settlement of all claims and  grievances the sum of ████████████████████

25258255 v5-02/1042 ‘2008

2

Dollars (the "Settlement Payment"). So long as the Employee shall have vacated and delivered to ABRO the Unit as described in Paragraph 3, hereof, payment thereof shall be made by ABRO or on its behalf by check payable to the order of Sefket Redzepagic within two (2) business days after the Effective Date of this Severance and Settlement Agreement and General Release as that term is defined in Paragraph 13, hereof, transmitted to the Employee by hand.

(b)     The Employee warrants and represents that he is and shall remain fully responsible for all taxes associated with the Settlement Payment and shall indemnify and hold ABRO harmless from any amount, including federal, state or local income taxes, other employment-type taxes, interest, penalties and reasonable attorneys' fees which any taxing authority may assess with respect thereto.

3.     <u>Employee's Vacatur of the Unit.</u>

The Employee shall vacate the Unit on or before September 9, 2014, leaving same completely vacant, broom clean and in the same condition as on the date upon which Employee's occupancy commenced. As such, the Employee hereby confirms that effective as of September 9, 2014, neither he nor any member of his family nor any other person whom he has or might have authorized to occupy the Unit shall have any right to continue to occupy the Unit as of or after September 9, 2014. As such, the Employee hereby consents to the immediate issuance of a warrant of eviction in any matter necessarily commenced in the Civil Court of the City of New York, New York County, Housing Part, with a stay of execution of such warrant until September 9, 2014. The Employee understands and agrees that he shall receive the Settlement Payment only after delivering the Unit back to ABRO and such payment shall be made on the later of the date which is two (2) business days after delivery of the Unit and the Effective Date hereof as that term is defined in Paragraph 13, hereof.



#5298255 v5 \02\10\12 \0928

3

000042

4.   UI Benefits Claim

The Employee understands and agrees that ABRO will not participate in or

interfere with any claim made by the Employee for unemployment insurance benefits and the

Employee acknowledges that his employer for purposes of, and in connection with any such

claim is Melohn Properties.

5.   Employee's General Release and Waiver of All Claims.

In consideration of ABRO's payment of the Settlement Payment as well as its

agreement to permit the Employee to continue to occupy the Unit to the date specified in

Paragraph 2 and 3(b) hereof, which the Employee specifically acknowledges is over and above

that to which he is otherwise entitled pursuant to any other contractual or legal authority, the

Employee, on behalf of himself, his heirs, estate, executors, administrators, representatives and

assigns, does fully and forever release and discharge ABRO MANAGEMENT, INC., 4750

REALTY LLC, and MELOHN PROPERTIES, including its and their past and present members,

officers, directors, partners, agents, representatives, employees, attorneys, successors and

assigns, including, more particularly, Richard Scharf and Martin Scharf, and Local No. 2

Building Services Employees & Factory Workers USWU, IUJAT ("Local 2"), its and their

affiliates and predecessors in interest as well as its officers, agents, representatives, employees,

attorneys, successors and assigns (together the "Released Parties") from any and all actions,

claims, demands, losses, expenses, obligations and liabilities related to any conduct or activity

occurring before the Effective Date hereof, including, but not limited to: (a) any claims relating

to or arising from Employee's employment with Melohn or ABRO's decision not to hire the

Employee, or the effective termination of Employee's employment; (b) any alleged employment

discrimination under any federal, state or municipal statute, regulation, order, rule or legal



4

authority, including, without limitation, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, and the Age Discrimination in Employment Act, of 1967, as amended by the Older Workers' Protection Act and otherwise, the New York Human Rights Law (New York Executive Law § 290, et seq.); the New York City Human Rights Law (New York City Administrative Code §§ 8-101, et seq.); and New York Labor Law §§ 740, et seq., each as amended (c) any and all claims to further, different or premium compensation, wages or salary of any kind or type, including without limitation, those pursuant to the Fair Labor Standards Act of 1938, as amended and the New York Labor Law; and any other claim for compensation for work, labor or services; (d) any and all claims under the National Labor Relations Act, as amended or any state analog thereto; (e) any and all purported grievances or other claims emanating from any former collective bargaining agreement or purported extension thereof; (f) any and all contract, tort or personal injury claims; (g) any and all claims for punitive, exemplary or statutory damages including but not limited to claims pursuant to N.Y. Workers' Compensation Law §§120 and 241;  (h) any and all claims to continued entitlement to occupancy of the Unit; (i) any and all claims of coverage or entitlement to protection or benefits under any Local 2 other labor agreement; (j) any and all claims alleging Local 2's breach of its duty fairly to represent the Employee in this or any other matter; and (k) any and all claims for attorneys' fees.  The Employee represents and warrants that he has not assigned any such claims or authorized any other person, group or entity to assert such claims on his behalf.  Employee expressly waives any and all rights under the laws of any jurisdiction in the United States, or any other country, that limit a general release to claims against the aforesaid parties known or suspected to exist in his favor as of the date of this Severance and Settlement Agreement and General Release.



#5282255 v5 1021042 10008

5

MIDTOWN 00408

6.     No Other Claims or Filings.

As further consideration and inducement for this Severance and Settlement Agreement and General Release, Employee agrees and represents that with the exception of a potential claim for unemployment insurance benefits, he has not filed or otherwise pursued any charges, complaints or claims of any nature which are in any way pending against ABRO, 4750, or any of the other Released Parties, with any local, state, federal government agency, council, court or arbitration tribunal ("Agency or Tribunal") and, to the extent permitted by law, further agrees, represents and covenants that he will not do so in the future.  If any Agency or Tribunal assumes jurisdiction of any charge, complaint, cause of action or claim released hereby or any other thereof on behalf of or related to the Employee, he will take reasonable actions to attempt to ensure that such Agency or Tribunal withdraws from and/or dismisses the matter, with prejudice, insofar as it is asserted on behalf of or relates to him, including but not limited to, requesting such action by such Agency or Tribunal.  The Employee agrees he will not participate or cooperate in any such matter(s) except as required by law.

7.     Confidentiality of Severance and Settlement Agreement and General Release Terms.

The parties hereto agree that the terms and conditions of this Severance and Settlement Agreement and General Release, the negotiations which led thereto and any and all actions by the parties in accordance therewith, are strictly confidential and, with the exception of the parties hereto, their respective attorneys and tax advisors, the Employee's immediate family or as required by applicable law or to enforce or effectuate this Severance and Settlement Agreement and General Release, none of such negotiations or actions will, directly or indirectly, be disclosed, discussed, or revealed to any other person, entity, or organization, whether within or outside ABRO without prior written approval of the party or parties concerning whom

#5288255 v5 \021042 \0008

6

MELUCH 00409
000045

disclosure is contemplated. Confidentiality with respect to the Severance and Settlement Agreement and General Release shall extend to the terms of settlement, the amount of payments made by or received by any party, the demands of the parties and the negotiations relating to the settlement and any conditions upon the settlement as reflected by this Severance and Settlement Agreement and General Release. Confidentiality precludes any disclosure to any member of the media, other attorneys, experts or potential expert witnesses, Agency or Tribunal or the public, except under subpoena or other compulsory process or as may be required in order for ABRO or Employee to remain in compliance with applicable law or, as to ABRO, to satisfy any necessary financial disclosure obligations. The parties further agree to take all reasonable steps necessary to attempt to ensure that confidentiality is maintained by any of the individuals or entities referenced above (other than any Agency or Tribunal) to whom disclosure is authorized. The Employee represents that he has not, prior to his execution of this Severance and Settlement Agreement and General Release disclosed any settlement offer or proposal made by ABRO leading to the execution hereof or any of the terms of this Severance and Settlement Agreement and General Release to any employee or other representative of ABRO. In the event the Employee is served with or receives a subpoena or written demand calling for production of or testimony relating to any information affected by these confidentiality provisions from any entity or person, including any Agency or Tribunal he shall, as soon as practicable, give notice thereof as hereinafter provided. Notwithstanding the foregoing, the Employee may advise third parties that he resigned his employment with ABRO to pursue other career opportunities or utilize other words to that effect.



#5288235 v5 \021042 \0008

7

MD00046 00410

8.    No Voluntary Testimony.

(a)    As further consideration and inducement for this Severance and Settlement Agreement and General Release, the Employee agrees that he will not participate, cooperate, aid, or give testimony in any action or proceeding brought against, or which in any way relates to any of the Released Parties in any forum, whether administrative, arbitral or judicial, on behalf of himself or of any other party or interest.

(b)    This provision shall not apply to testimony or information required to be provided by Court order or subpoena, provided that, should the Employee be served with or otherwise become aware of a Court order or subpoena seeking testimony, he shall immediately give notice thereof to ABRO.

9.    Return of ABRO's Property.

The Employee agrees and represents that he has returned to ABRO all equipment and/or other property, and all other information in tangible form belonging to it which has been or is in his care, custody, possession or control during his employment with Melohn, including specifically, without limitation, any documents, personnel information, equipment, keys, electronic passwords, memoranda and/or files in whatever form, including any electronic data format, and that he has retained no copies of any such information.

10.    Employee's Cooperation.

As a material inducement for ABRO's agreement to pay the Employee the Settlement Payment and to provide to him the other consideration set forth in this Severance and Settlement Agreement and General Release, and in order to assist ABRO in effecting an orderly and efficient transition of management responsibility, the Employee shall through March 2, 2015, and upon reasonable request made of him by authorized representatives of ABRO, provide


#5288255.v5.021042.\0X08

8

reasonable telephonic assistance or other assistance to ABRO during regular business hours on matters in which he was involved during his employment and of which he has knowledge.

11.    Non-Disparagement

The Employee expressly agrees to refrain from uttering any disparaging statements concerning the Released Parties, including, without limitation, making any other statement, oral or written, which portrays any or all of the Released Parties in an unfavorable light or subjects any thereof to scorn, obloquy or ridicule.

12.    No Admission of Liability.

By entering into this Severance and Settlement Agreement and General Release, neither ABRO nor 4750 nor any of the other Released Parties admits any liability whatsoever to the Employee or to any other person arising out of its decision to employ another as superintendent in the Building, and ABRO expressly denies any and all such liability.

13.    OWPBA Compliance Provision.

The Employee may consider this Agreement for a period of twenty-one (21) days after receiving it. If this Agreement is not signed and returned to ABRO within twenty-one (21) days of Employee's receipt of this Agreement, it shall be considered withdrawn by ABRO. The Effective Date of this Severance and Settlement Agreement and General Release shall be the seventh (7th) day after it is signed by the Employee. During that seven (7) day period, the Employee may revoke his acceptance of this Severance and Settlement Agreement and General Release by delivering to ABRO a written statement stating that he wishes to revoke this Agreement or not be bound by it.



S.A.
#5288255.v6-7/21042 \0008

9

14.  Knowing and Voluntary Agreement; Merger.

Employee acknowledges that he is entering into this Severance and Settlement Agreement and General Release knowingly and voluntarily after carefully reviewing it; that he has had the opportunity to review it with counsel of his own choosing, that he understands its final and binding effect; that the only promises made to him to obtain his agreement and signature are those stated in this Severance and Settlement Agreement and General Release; that this Severance and Settlement Agreement and General Release supersedes any and all prior oral or written agreements between and among the parties and that this document together with that which is incorporated by reference and made a part hereof pursuant to Paragraph 1 hereof, represent the complete terms of their Severance and Settlement Agreement and General Release and may not be amended or modified except in a writing signed by the party or parties sought to be charged. There are no representations, inducements or promises not set forth herein on which the Employee has relied or may rely.

15.  Joint Participation in Preparation of Agreement.

The parties hereto participated jointly in the negotiation and preparation of this Severance and Settlement Agreement and General Release, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft it. Accordingly, it is agreed that no rule of construction shall apply against any party in favor of any other party. This Severance and Settlement Agreement and General Release shall be construed as if the parties jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.



*SR*

#5288255 v5 \021042 \0608

MELOHN 00413

16.   Severability, Enforceability, Consent to Jurisdiction: Service of Process.

(a)   If any provision of this Severance and Settlement Agreement and General Release shall be held finally by a court of competent jurisdiction to be illegal, void, or unenforceable, then such provision shall be of no force and effect in such jurisdiction. However, the illegality or unenforceability of such provision in such jurisdiction shall have no effect upon, and shall not impair the enforceability of any other provision of this Severance and Settlement Agreement and General Release in such jurisdiction and shall have no effect upon, and shall not impair the enforceability of such provision or any other provision of this Severance and Settlement Agreement and General Release in any other jurisdiction. If a court of competent jurisdiction finally holds that Paragraph 5, hereof is illegal, void, or unenforceable, then the Employee shall execute a release that is valid and enforceable therein.

(b)   The parties each hereby consent to the exclusive jurisdiction of any state or federal court located within the State of New York in connection with all actions or proceedings arising out of or relating to this Severance and Settlement Agreement and General Release. The parties hereto accept, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts and waive any defense of forum non conveniens, waive any right to trial by jury and irrevocably agree to be bound by any judgment rendered thereby in connection with this Severance and Settlement Agreement and General Release. The parties further agree that to the extent permitted by law, any and all process directed to any of the parties in any such litigation may be served upon such party outside of the State of New York in the same manner and with the same force and effect as if service had been made within the State of New York.



MELLON 00414

17.   Attorneys' Fees and Costs.

As further mutual consideration for the promises set forth herein, the parties agree that they each are responsible for their own attorneys' fees and costs, if any, and agree that he/it will not seek reimbursement from the other party for attorneys' fees and/or costs incurred in this matter or relating to any matters addressed in this Severance and Settlement Agreement and General Release, except as hereinbefore specified. In the event of any litigation to enforce the provisions of this Severance and Settlement Agreement and General Release, the prevailing party shall be awarded his or its reasonable attorneys' fees and costs.

18.   Choice of Law.

This Severance and Settlement Agreement and General Release will be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law principles.

19.   Union Representation.

The Employee hereby warrants and represents that he has been satisfactorily represented by Local 2 in all respects.

20.   Headings.

The headings in this Severance and Settlement Agreement and General Release are used for ease of reference only, and may not be used as aids in its interpretation.

IN WITNESS WHEREOF, the parties have caused this Severance and Settlement


#528R235.v5 V021042 VXX08

12

MELOHN 00415
000051

Agreement and General Release to be executed.

Date delivered to the Employee: September _3_, 2014

SEFKET REDZEPAGIC                    ABRO MANAGEMENT, INC.
                                     a/a/f 4750 REALTY LLC

_Sefket Redzepagic_                  By: _____
                                          Authorized Signatory
Date Signed: _9/3/14_                Date Signed: _9/3/14_


STATE OF NEW YORK       )
                        ) SS.:
COUNTY OF _Kings_       )

        On September _3_, 2014, before me personally came SEFKET REDZEPAGIC, to
me known to be the individual described herein, and who executed the foregoing Severance and
Settlement Agreement and General Release, and duly acknowledged to me that he executed the
same.

                              _____
                              Notary Public

CAROL P. AIUTO
NOTARY
NO. 01AI6108817
QUALIFIED IN
KINGS COUNTY
COMM. EXP.
01/06/2016
PUBLIC
STATE OF NEW YORK

(WJ)
S R
0528.8255 v3 \021042\0008

                                      13

# Exhibit "26"

# COLLECTIVE BARGAINING AGREEMENT

**Agreement made the** ___1st___ **day** September **2010** between

Melohn Properties 1995 Broadway 14th floor New York, N.Y. 10023

Hereinafter termed the "Employer" and Local 2 of Building Service Employees & Factory Workers, USWU, and IUJAT hereinafter termed the "Union", for the following premises,

Wherein it is mutually agreed as follows:  4750 Bedford Avenue
(Brooklyn)

## ARTICLE I
### Recognition and Union Status

A. The employer Recognizes the Union as the exclusive bargaining representative for all building service employees, excluding supervisors as defined in the National Labor Relations Act as amended, working at the premises.

B. There shall be a Union shop requiring Union membership by every employee as a condition of employment after the thirtieth (30) day following his employment, or the effective date of this agreement, whichever is later, The Union shall not request the Employer to discharge or otherwise discriminate against any employee except in compliance with law.

C. The employer shall deduct regular Union dues and Initiation fee from salaries of employees covered by this agreement, who in writing, in accordance with the law voluntarily authorize the Company to do so. Such deductions shall be remitted to the Union on or before the tenth (10) day of the current month.

D. If the Employer receives a letter from the Union requesting the discharge of any employee for failure to comply with Section 2 of this article, unless the Employer questions the propriety of so doing, the employee shall be discharged within fifteen (15) days of said notice If prior thereto the employee does not take proper steps towards complying with Section 2. If the Employer questions the propriety of the discharge the Employer shall immediately submit the matter for arbitration pursuant to the arbitration in Article VI. If the arbitrator determines that the employee has not so complied, the employee shall be discharged within ten (10) days after written notice of such determination has been given to the Employer.

E. The union agrees to hold the Employer harmless from any liability arising from any discharge pursuant to the provisions of this Article.

## ARTICLE II
### Wages, Hours and Working Conditions

A. The minimum wages for full time employees shall be paid at the rate set forth in schedule A.

B. The employees shall receive a wage increase of see page 6 a week effective 09/01/10 The employees will receive an increase of see page 6 week effective 09/01/11 A third increase of see page 6 week will be given to the employees effective 09/01/12

C. Part-time employees shall be paid the same hourly rate as full-time employees in the same occupational classification.

D. There shall be not pyramiding of overtime pay where overtime pay is due for more than one reason; overtime shall be computed on the basis yielding the largest amount.

E. All wages, including overtime, shall be paid by check no later one week after the workweek. If a regular payday falls on a holiday, employees shall be paid on the preceding day.

F. The standard workweek shall be (40) hours consisting of five (5) consecutive workdays of eight (8) hours per day. Any hour worked in excess of eight (8) hours per day or forty (40) hours in a week shall be paid at the rate of one and half of the hourly rate.

G. Luncheon recess shall not be less than forty-five (45) minutes or more than one (1) hour. No employee shall be required to take time off in any workday in excess of one (1) hour for lunch recess without having such time charged against the Employer as working time.

I. In all other respects, the present practice of the building with regard to the duties of the employee shall be continued. The employees shall take care of emergencies. An employee who is required by the Employer to perform other than emergency work on his day off shall receive by mutual agreement of the Employer and the employee equivalent time off. The Employee shall not be required to do work in conflict with the law.

1


EXHIBIT
26
Redze pag o
1/8/16

MELOHN 00426

JAN. 31. 2011( 2:11PM   MELOHN PROPERTIES                    NO. 764;67  P. 3

# TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE NO. |
|---|---|---|
| I | Recognition and Union Status | 1 |
| II | Wages, Hours and Working Conditions | 1 & 3 |
| II | Table of Contents | 2 |
| III | Holidays | 3 |
| III | Employee's Birthday | 3 |
| IV | Replacements and Promotions | 3 |
| V | Vacations | 4 |
| VI | Uniforms and Other Apparel | 4 |
| VII | First Aid Kit | 4 |
| VIII | Fire and Flood Call | 4 |
| IX | Eye Glasses and Insignia | 4 |
| X | Bulletins | 4 |
| XI | Sanitary Arrangements | 4 |
| XII | Tools, Permits and Fines | 5 |
| XIII | Drug Free Work Program | 5 |
| XIV | No Discrimination | 5 |
| XV | Disability Benefits, Law-Unemployment | 5 |
| XVI | Sickness Benefits | 5 |
| XVII | Welfare Fund | 6 |
| XVIII | Pension Fund | 6 |
| XIX | Leave of Absence | 6 |
| XX | Reduction of Force | 6 |
| XXI | Termination Pay | 6 |
| XXII | Jury Duty | 7 |
| XXIII | Bereavement | 7 |
| XXIV | Arbitration | 7 |
| XXV | Rights of Management | 7 |
| XXVI | Shop Steward Union Representative | 7 |
| XXVII | Strikes and Lockouts | 8 |
| XXVIII | Saving Clause | 8 |
| XXIX | Sale or Transfer of Building | 8 |
| XXX | Term of Agreement and Reopening | 8 |
| Schedule A | Job Classification | 9 |
| Schedule B Section I | Working Superintendent Wages, Days Off and Conditions | 10 10 |
| Schedule B Section II | Job Security & Severance Pay | 10 / 11 |

MELOHN  00427

H. No provision of this agreement shall be construed to lower the weekly, daily, hourly or part-time wage or rate of any full or part-time employee. If the employees have in effect a practice of terms or conditions better than those provided herein, applicable generally with respect to compensation, hours, relief periods, such better terms of conditions shall be continued in effect for all employees who may now, or during the term of this agreement, be employed in the building.

I. If the Employer requires an employee to occupy an apartment as a condition of this employment, the Employer shall provide an apartment rent-free and shall pay for normal electric and gas service and business telephone calls.

J. The employer may discharge an employee for just cause only. If there is a dispute concerning the discharge, a party may submit the dispute to arbitration. The Employer agrees and waives its right to evict or interfere with an employee occupying an apartment as a condition of his employment until the issue of just cause has determined through arbitration provided that the Union has submitted the dispute concerning the discharge to arbitration.

## ARTICLE III
### Holidays

A. New Year's Day, Martin Luther King Day, Lincoln's Birthday, Washington's Birthday, Good Friday, Decoration Day, Independence Day, Labor Day, Columbus Day, Election Day, Veteran's Day, Thanksgiving Day and Christmas Day, are recognized as holidays. Employees shall receive their straight time pay for said holidays. If the employees are required to work on such holiday, they shall receive double time and one-half pay for each holiday worked. Employees are required to work the day before and the day after each holiday in order to receive the holiday pay.

B. Any employee required to work on a holiday described in this agreement shall receive at least eight (8) hours pay for such work at the holiday rate of pay (in addition to eight (8) hours pay he receives for such holiday as such) even though he is not required to work eight (8) hour

C. Any regular full-time employees who is ill in any payroll week in which a holiday falls is entitled to holiday pay or day off, if he worked at least one (1) day during the payroll week.

D. Any regular full-time employee whose regular day off falls on a holiday, shall receive an additional day's pay therefore or, at the option of the employer, an extra day off within seven (7) days immediately proceeding or succeeding the holiday.

### Employees Birthday

A. Regular employee's birthday falling on a regular workday, or by agreement between the employee and the employer, another day within seven (7) calendar days immediately preceding or succeeding the birthday, shall be a paid day off, or in lieu thereof, at the Employer's option, the employee shall receive an additional normal day's pay for working on that day; provided that, whenever possible, the employee shall advise the Employer of his birth date at least two (2) weeks in advance thereof and provided further that where such notice is untimely, the Employer may give the employee an additional day's pay, or an extra day off within thirty (30) days following such notice.

B. When regular full-time employee's birth falls on a contract holiday or on one of his regular days off, he shall receive an additional day's pay therefore or, at the Employer's option, an extra day off within seven (7) calendar days immediately preceding or succeeding the birthday; or if required to work he should receive a day's pay, or by agreement between the employee and the Employer, another paid day off within seven (7) calendar days immediately preceding or succeeding the birthday, in addition to the compensation elsewhere providing herein. This shall not be considered pyramiding.

C. Except in a leap year, March 1 shall be considered the birthday of any employee born on February 29.

## ARTICLE IV
### Replacements and Promotions

A. Preference shall be given to those employed in the building in filling vacancies and newly created position(s). The Employer shall select a replacement based primarily on seniority, but training, ability and efficiency, appearance and the Employer shall also consider personality for that particular job.

B. People employed as extras or contingents with substantial regularity for a period of four (2) months or more shall receive preference for steady employment.

C. In filling a vacancy or newly created position(s), the wages of the employees shall be those prevailing and in force in the building for similar work, excluding extra pay attributable to years of services or special consideration beyond the requirements of the job which the replacement is not qualified to meet. If there be no similar work in the building, the new employee shall receive a starting wage to be negotiated between the parties. If the parties cannot agree on a starting wage, the matter shall be submitted to arbitration as provided herein.

In the application of the forgoing paragraph, the judgment of the Employer shall control, except for the negotiation of wage rate as provided for in the proceeding paragraph.

3

JAN. 31. 2011 2:11PM   MELOHN PROPERTIES                    NO. 764   P. 5

## ARTICLE V
### Vacations

A. Every employee employed with substantial continuity in any building all by the same Employer shall receive each year a vacation with pay as follows:

Employees who have worked 1 year shall receive 1 week   Employee who has worked 10 years shall receive 4 weeks
Employees who have worked 2 years shall receive 2 weeks   Employees who have worked 15 years shall receive 5 weeks
Employees who have worked 4 years shall receive 3 weeks

B. Length of employment for vacation shall based upon the amount of time a employee would be entitled to on Mar 1st of the year in which the vacation is given, subject to negotiation and arbitration where the result is unreasonable.

C. Part-time workers regularly employed shall receive proportionate vacation allowances based on the average number of hours per week they are employed.

D. Only actual working days shall count as part of the allowed vacation and regular days off. Holidays falling during the vacation period shall not be counted. If a holiday falls during the vacation, the employee shall receive an extra day off within seven (7) days immediately preceding all succeeding his vacation.

E. Vacation wages shall be paid prior to the vacation period unless otherwise requested by the employee. The employee is entitled to an actual vacation and cannot be required to accept money in lieu of thereof.

F. When comparable with the proper operation of the building, the employees shall receive their choice of vacation periods accordingly to seniority. The vacation shall be confined to the period beginning Mar 1st and ending October 31st of each year. These dates may be changed and the third week of vacation may be taken at a separate time by mutual agreement of the Employer and employee.

G. Any employee leaving his job for any reason shall be entitled to a vacation accrual allowance, compute his length of service as provided in the vacation schedule, based on the period from the previous May 1st (all from the date of his employment of later employed) to the date of his leaving. However, any employee who has received a vacation during a previous vacation period Mar 1st through October 31st, and who leaves his job during the next vacation period, shall be entitled to full vacation accrual allowances

No employees leaving his position of his own accord shall be entitled to accrued vacation credits unless he gives five (5) working day's notice that he is leaving.

## ARTICLE VI
### Uniforms and Others Apparel

Uniform in work clothes shall be supplied and maintained by the Employer. Employees doing outside work for a substantial part of their time shall be furnished adequate wearing apparel.

## ARTICLE VII
### First Aid Kit

The Employer shall maintain a complete first aid kit readily available to all employees.

## ARTICLE VIII
### Fire and Flood Call

Employees when on fire and/or float call shall be reimbursed for all loss of personal effects incurred in the line of duty.

## ARTICLE IX
### Eye Glasses and Insignia

Employees may wear eyeglasses and the Union insignia while on duty.

## ARTICLE X
### Bulletin Board

The Employer exclusively for Union announcements and notices of meetings shall furnish a Union bulletin board.

## ARTICLE XI
### Sanitary Arrangements

Adequate sanitary arrangements shall be maintained and the Employer for the use of every employee shall furnish washing facilities.

## ARTICLE XII
### Tools, Permits and Fines

All special tools shall be supplied, maintained and replaced by the Employer. The Employer shall bear the expense of permits, licenses and certificates for special equipment necessary for the operation of the building. The

4

MELOHN 00429

Employer will pay all fines imposed for the violation of any codes, ordinances, administrative regulations, and statutes, except when the same shall have resulted from the employee's willful disobedience.

## ARTICLE XIII
### Drug Free Work Program

Section 1. If the employer has reasonable cause to believe that employee is a drug abuser, substance abuser or alcohol abuser, the Employer can suspend the suspected abuser with pay not to exceed three (3) days and require that the employee be tested to determine whether the employee has a drug, substance or alcohol abuse problem.

Section 2. The employer will provide the testing service and pay all related costs for the testing.

Section 3. If the test reveals that the employee is a drug, substance or alcohol abuser, he will be suspended with no pay and the employee will be given the opportunity to participate in a rehabilitation program to suit his individual needs.

Section 4. If employee completes the rehabilitation program and subsequently tests clean of drugs, substance or alcohol abuse, the employee shall be returned to his previous position with no lost of seniority.

Section 5. Should the employee fail to or refuse to submit to testing for drug, substance or alcohol abuse or fails to participate in a rehabilitation program after testing positive for drug, substance, or alcohol abuse, the employee shall be terminated without recourse to grievance producers contained and bargaining agreement between the parties.

Section 6. It is agreed that procedure set forth above shall be the exclusive procedure for resolving disputes concerning drugs, substance or alcohol abuse and testing, unless the employee is convicted of the drug use or possession.

## ARTICLE XIV
### No Discrimination

A. There shall be no discharge or other discrimination against any employee by reason of race, creed, color, national origin, sex or age or Union membership, or because he has begun any preceding under this agreement or under any state or federal statute concerning wages, hours, or conditions of employment.

B. The employer will pay the full fee for any employee hired through a fee-charging agency.

C. All references to the male gender in this agreement shall deem to include the female gender.

## ARTICLE XV
### Disability Benefits Law – Unemployment Insurance Law

A. The employer agrees to cover the employees under the New York State Disability Benefits Law on a non-contributory basis from the employee whether or not such coverage mandatory.

B. The employer agrees to cover the employee under the New York State Unemployment Insurance Law whether or not such coverage is mandatory.

C. Failure to cover employees as herein provided shall make the Employer liable to an employee for all loss of benefits and insurance.

D. The employer will cooperate with employees in the processing of their claims and shall keep available all necessary forms properly addressed and shall post adequate notice of places for filing. Any violation by the Employer, including but not limited to posting notice or furnishing forms, shall be subject to arbitration.

## ARTICLE XVI
### Sickness Benefits

Employees shall be entitled to (10) paid sick days per calendar year. Employees who have been employed for one full year and are entitled to sick pay who have continued in employment to December 31ˢᵗ of the year and have not used up the (10) days sick pay, shall, by January 15ᵗʰ of the next year, be paid a full day's pay at their regular rate of pay for each unused sick day.

## ARTICLE XVII
### Welfare Fund

A. The employer agrees to make payments into a welfare trust fund, known as Building Services Local 2, Welfare Fund for the purpose of covering employees, including such employees of other employers in or connected with the industry for whom contributions are paid with welfare benefits under such provisions, rules and regulations as may be determined by the Trustees of the Fund.

B. The employer shall make payments to the Fund to provide for benefits to:
(i) Employees covered by the provisions of this agreement who are regularly employed by the Employer for fourteen (14) hours or more a week; and
(ii) Such other employees as the employer may contribute for, subject to the consent of the Trustees.

C. The Employer shall contribute to the Fund at rates shown below per month payable in advance for each employee, except as provided for in Article IX of this Agreement, to be paid at such times and in such manner as may be determined by the Trustees, to provide coverage of employees and their dependent families with welfare benefits under such provisions, rules and regulations as be determined by the Trustees.

5

MELOHN 00430

D. If the Employer fails to make the required reports or payments to the Fund, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to arbitration and suits of law, to enforce such reports and payments, together with interest or liquidated damages at the rate to be determined by the Trustees or as otherwise provided by law, and any and all expenses of collection including but not limited to counsel fees, arbitration costs and fees, and court costs.

E. Employees included under said Fund shall be covered in accordance with the provisions of the Agreement and Declaration of Trust establishing the Fund.

F. The employer is required promptly to notify the Fund of its termination of an employee and if it fails to do so, it shall be liable for any benefits wrongly paid on behalf of a terminated employee as a result of such failure.

G. Contributions to the Building Services Local 2, Welfare Fund shall be based on the contribution level established by the Insurance Co. This contribution level is determined on June 1st of each year. The current contribution level is.        $975.00  Per month 09/01/10-08/31/11
                   $1075.00 Per month 09/01/11-08/31/12
                   $1175.00 Per month 09/01/12-08/31/13

## ARTICLE XVIII
### Pension Fund

The Employer shall make contribution to the Retirement Plan and Trust Fund, Local 2 as follows: 5% Employer and 5% Employee contribution to the Retirement Plan and Trust Fund Local 2 payable by the 1st of each month, an 1 1/2 % fee will be charge as penalty for late payment in accordance to The Department of Labor regulation.

## ARTICLE XIX
### Leave of Absence

Once during the term of this agreement, upon written application to the Employer and the Union, a regular full-time employee (Excluding the superintendent) employed in the building for five (5) years or more shall be granted a leave of absence not to exceed three (3) months with a possible extension not exceeding three (3) months in a case of bona fide illness or of injury whether or not covered by the New York State Workmen's Compensation Law. When such employee is physically and mentally able to resume work, he shall on one (1) week's prior notice to the Employer, be then re-employed with no loss of seniority.

Once in every five (5) years upon six (6) weeks' written application to the Employer, a regular full-time employee (excluding the Superintendent) employed in the building for five (5) years or more shall be granted a leave of absence for personal reasons not to exceed two (2) months. Upon returning to work, he shall be re-employed with no loss of seniority.

## ARTICLE XX
### Reduction of Force

If a reduction in force is required, the Employer shall give to the employees who have been employed for one (1) year at least one (1) week's notice of layoff or discharge or in lieu thereof, an additional week's pay as well as vacation pay and termination pay as provided herein. In addition, except for normal or routine reduction, the Union shall be given at least two (2) weeks' advance written notice.

## ARTICLE XXI
### Termination Pay

The following provisions regarding termination pay shall prevail for employees other than superintendents.

A. In case of termination of employment because of the employee's physical or mental inability to perform his duties, or from reduction in force occurring for reasons other than conversion of elevators to automatic operation, the employee shall receive, in addition to his accrued vacation credits, termination pay according to years of service in the building or with the Employer on the following basis.

Employees with:

| | |
|---|---|
| 3 and less than 5 years.............1 week's pay | 11 and less than 13 years..................7 week's pay |
| 5 and less than 7 years.............2 week's pay | 13 and less than 15 years................8 week's pay |
| 7 and less than 9 years.............3 week's pay | 15 and less more 17...................10 week's pay |
| 9 and less than 11 years ..........5 week's pay | 17 and more.....................12 week's pay |

An employee physically or mentally unable to perform his duties shall resign and receive the above termination pay if he submits satisfactory evidence of such inability. If the Employer does not deem the evidence satisfactory, the question may be submitted to arbitration.

B. In case of termination of employment because of conversion of elevators to automatic operation, the employee shall receive, in addition to his accrued vacation credits, termination pay according to years of service in the building or with the Employer on the following basis.

6

MELOHN 00431

Employee with:

| | | | |
|---|---|---|---|
| 3 and less than 8 years | 2 week's pay | 15 and less than 18 years | 8 week's pay |
| 8 and less than 10 years | 4 week's pay | 18 and less than 20 years | 9 week's pay |
| 10 and less than 12 years | 5 week's pay | 20 or more years | 10 week's pay |
| 12 and less than 15 years | 7 week's pay | | |

C. The right to accept termination pay and resign where there has been a reduction in force shall be determined by seniority. Termination pay shall be offered to the most senior employee, then to the next most senior and so on until the offer is accepted. If no employee accepts the offer, the least senior employee or employees shall be terminated and shall receive any termination pay to which he or they are entitled.

D. "Week's pay "for the purpose of the above paragraphs means the regular straight-time weekly pay at the time of termination. If the employer offer part-time employment to the worker entitled to termination pay, he shall be entitled to termination pay for the period of his full-time employment. If the employee accepts such part-time employment he shall be considered a new employee for all purposes.

## ARTICLE XXII
### Jury Duty

Employees who are called for jury duty and who serve on jury duty shall be paid the difference between jury duty pay and their regular earnings for such time as they serve as jurors. Employees who receive such notice to serve on jury duty must notify his employer immediately when such notice is received.

## ARTICLE XXIII
### Bereavement

Employees shall receive three days off with pay in case of death in the immediate family (mother, father, sister, brother, children, and spouse).

## ARTICLE XXIV
### Arbitration

A. Any dispute or grievance between the parties hereto (the Employer and the Union) which cannot be settled directly by them shall be submitted for arbitration to an arbitrator designated by the New York Employment Relations Board, or an arbitrator agreed upon by the parties.

B. Any dispute or grievance, except as otherwise provided herein and except a grievance involving basic wage violations, shall be presented to the Employer in writing within (180) days of its occurrence, unless the Employer agrees to an extension or for good cause shown the Arbitrator finds an extension should be granted.

C. If the Arbitrator finds that an employee has been unjustly discharged, he shall be reinstated to his former position without loss of seniority or rank and without reduction of salary.

D. If either party defaults in appearing before the Arbitrator, after having been given due written notice, the Arbitrator may render an award upon the testimony of the party appearing.

E. Arbitration expenses shall be borne equally by the parties, except that the Employer shall bear the cost of the arbitration if it has violated any obligation relating to the provisions concerning payments for welfare and pension contributions.

F. The Procedure herein outlined in respect to matters over which the Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues. The arbitrator shall have the power to award appropriate remedies. The award of the arbitrator is final and binding upon the parties and the employee or employees involved, provided, however, that nothing herein shall be construed to forbid either party from resorting to court for relief from or enforcement of the arbitration award.

G. In a proceeding to confirm an arbitration award, the party moving to confirm the award may serve the other party by registered or certified mail.

## ARTICLE XXV
### Right of Management

A. The union recognizes management's right to direct and control its policies subject to the obligation(s), of this agreement.

B. The employees will cooperate with the obligations of the agreement to facilitate the efficient operation of buildings.

## ARTICLE XXVI
### Shop Steward and Union Representative

Section 1. The Employer agrees to recognize the shop steward as appointed by the union.

Section 2. The Steward may assist in investigation, presentation and settling of grievances.

The Steward shall not be discriminated against in the charging duties assigned to him/her by the union.

The Shop Steward has no authority to take strike action or any other work stoppage interrupting the Employer's business, except as authorized by official action of the union.

7

MELOHN 00432

The shop Steward shall have free movement within the premises to the investigate grievances or confer with the Employer, provided it does not interfere with necessary work.

Section 3.  A duly authorized representative of the union will be permitted to visit the premises upon notification of a duly authorized representative of the Employer at reasonable times for the purpose of transacting any business of the Union.

## ARTICLE XXVII
### Strikes and Lockouts

A.  During the term of this agreement there shall be no stoppage of work, strike picketing or lockout, except as provided in Section 2 of this Article. If any party of this agreement violates this provision, the matter may be submitted immediately to arbitration for such action as the arbitrator deem necessary.

B.  If an arbitration award provides that the Employer owes contributions for the welfare fund or retirement fund or for the payment of wages and the employer does not comply with the award within thirteen (13) days after such award is sent by registered or certified mail to the Employer at its last known address, the Union may order a stoppage of work, strike or picketing to enforce such award and the Employer shall be liable for payment of lost wages, the stoppage of work or strike shall cease.

C.  The Union shall not be held liable for any violations of this article where it appears that the Union has taken all reasonable steps to avoid and end any such violations.

## ARTICLE XXVIII
### Saving Clause

If any provision of this agreement shall be held or declared to be illegal or of no legal effect, said provisions shall be deemed null and void without effecting the obligations of the balance of the contract.

## ARTICLE XXIX
### Sale or Transfer of Building

A.  In the event that the Employer sells or transfers title to the premises owed, maintained, managed and /or operated to any individual, partnership and/or corporation, in which he, she, or it or any person directly or indirectly associated with them in their realty business or by family relationship, has an interest, the Employer shall not be relieved of any responsibilities under the terms and conditions of this agreement until the expiration hereof.

B.  If the Employer shall sell, transfer, or otherwise dispose of its business, merge or consolidate it with any other person, firm or corporation, the employer must provide in the agreement by which such sale, transfer, assignment subletting, disposition, merge or consolidation is made that the person, firm or corporation thereafter operating the business shall assume all of the terms and conditions of this agreement, shall retain in its employ all employees then employed in the business, and shall be responsible for all unpaid wages, welfare payments, retirement payments, vacation, holidays, sick leave and all other monetary items. Any dispute arising under the article shall be subject to the arbitration procedure herein. The Arbitrator has jurisdiction to determine the dispute and issue a decision awarding appropriate relief, including damages. The term "Employer" as used in this agreement includes members, officers and stockholders of a corporate employer.

C.  The Employer must notify the Union by certified mail, return receipt requested, at least thirty (30) days prior to any contract of sale or transfer or other disposition of the property herein covered and shall furnish therein the date thereof and the name and address of the new owners or transferee to such agreement.

D.  Upon full compliance with the provision of this Agreement and providing the sale or transfer is bona fide, the seller shall be relieved of all responsibility under this Agreement, except as to accumulated benefits up to the date of such sale or transfer.

## ARTICLE XXX
### Term of Agreement Reopening

A.  This agreement shall be effective on the  1st  day of  September 2010 and shall remain in full force and effect for period of three (3) years thereafter. This Agreement shall be binding upon the parties hereto, their successors and assigns, representatives, executors, agents and administrators and shall apply to the premises presently owned, operated or conducted by the Employer, and any new premises that the employer may own, conduct, maintain or control at any time during the term of this agreement or any extensions or modifications thereof.

B.  The Employer and the Union agree that no less than thirty (30) days before the date set for expiration of this Agreement, at the option of the Union, they will convene and negotiate wages, hours and general conditions. In the event that the parties cannot agree on such terms, the dispute over the terms shall be submitted to binding interest arbitration in the manner set forth for arbitration in this Agreement. Any aware shall be final and binding and must be made effective retroactive to the anniversary date of the Agreement.

C.  In the event that either party does not give written notice to the other by certified mail, return receipt requested, at least sixty (60) days prior to the termination date hereof of desire to terminate the Agreement, this Agreement shall be automatically renewed and shall remain in full force and effect for additional period of three (3) years, from said termination anniversary date and the reopening provisions as set forth in subdivision (B) hereof shall be applicable.

8

MELOHN 00433

JAN. 31. 2011 ( 2:12PM)   MELOHN PROPERTIES                          NO. 764 2367   P. 10

IT WITNESS WHEREOF, the parties have hereof set their hands and seals the day above written.

Melohn Properties

Firm Name                                              LOCAL 2
                                                       OF BUILDING SERVICE EMPLOYEES
                                                       WORKERS, USWU, IUJAT
Sign By

Title
1995 Broadway 14th Floor New York, N.Y. 10023

Business Address

212-787-2500

Business Telephone                           By  Carlos Stuart - President

## SCHEDULE A

| JOB CLASSIFICATION | Present Weekly Wages 09/01/10-08/31/11 | Weekly Upon Increase 09/01/11-08/31/12 | Weekly Wage 09/01/12-08/31/13 |
|---|---|---|---|
| Superintendent (1) | $857.45 wkly | $877.45 wkly | $900.45 wkly |
| Maintenance | | | |
| Handyman | | | |
| Porter (2) | $778.47 wkly | $798.47 wkly | $819.47 wkly |
| Relief Porter | | | |
| Fireman | | | |
| Doorman (1) | $778.47 wkly | $798.47 wkly | $819.47 wkly |
| Relief Doorman | | | |
| Elevator Man | | | |
| Relief Elevator Man | | | |
| Painter | | | |
| Others | | | |

Employer            DATE    UNION    PRESIDENT    DATE

9

MELOHN 00434

Schedule B
Working Superintendent
SECTION I
Wages, Days off and Conditions

1. (A) The Employer may schedule the superintendent's day off, consecutively, provided, however, that the Employer must give the superintendent at least one week's notice of any change in his scheduled day off.

(b) In all other respects, the present practices of the building with regard to the duties of the superintendent shall be continued and as heretofore the superintendent shall take care of emergencies. A superintendent who is required by the Employer to perform other than emergency work

On his day or half day off shall receive by mutual agreement of the Employer and the superintendent, equivalent time off or a day or half day's pay, as the case may be.

(c) The superintendent shall not be required to renew cables on elevators or build block or hollow tile walls.

(d) The superintendent shall not be required to do work in conflict with law.

(e) In any case where an obvious inequity exist by reason of a superintendent's regular application of highly specialized abilities in his work, or where his work imposes special responsibilities, the Union may question the amount of the superintendent' s wage one during the term of this agreement through grievance and arbitration.

Schedule B
SECTION II
Job Security and Severance Pay

1. If the employer terminated the service of the Superintendent for reasons other than those set forth in Section 2 below, he shall be give the Superintendent thirty (30) day's written notice by registered mail or personal service to vacate the living premises occupied by him in the building. If the Superintendent is required to work during any portion of this notice period, he shall be paid at his regular rate of pay.

If the Superintendent voluntarily vacates any apartment he may occupy in the building within (30) days after receiving said notice, he shall receive severance pay on the following basis:

Superintendent with:

| | |
|---|---|
| 6 months but less than 2 years............4 week's pay | 4 year but less than 5 years.......... 7 week's pay |
| 2 years but less than 3 years............5 week's pay | 5 years but less than 6 year..........8 week's pay |
| 3 years but less than 4 years............6 weeks pay | 6 years or more 9week's pay |

Unless the Superintendent deliberately provoked his dismissal, or his conduct constituted a willful or substantial violation of the obligation of his employment or unless the Superintendent has less than two (2) years' service in the building and was discharged for physical or mental inability to perform his duties. A Superintendent who has been employed for less than six (6) months prior to said notice or who was discharges with less than two (2) years' service in the building for physical or mental inability to perform his duties, and who vacates his apartment within said thirty (30) days, shall receive from the Employer as moving expense the sum of $400.00.

The Union shall have the right to question the propriety of the termination of the Superintendent's services and to demand the Superintendent's reinstatement to his job, or severance pay, if any, as the case may be, by filing a grievance within fifteen (15) calendar days following receipt by the Superintendent of the notice to vacate, on the charge that the Employer acted arbitrarily and without considered judgement, provided, however, that the time to file a claim for severance pay shall not be limited in a case where the Employer failed to honor an agreement with the Superintendent or the Union to pay said severance pay. If the matter is not adjusted through the grievance procedure, it shall be submitted for final determination to the contract arbitrator who may sustain the termination with such severance pay, if any as the case may be, or order reinstatement: provided, however, that the arbitrator shall give due consideration th Superintendent's fiduciary and management responsibilities and to the need for cooperation between the Superintendent and the Employer.

The Employer's notice to the Superintendent shall be considered held in abeyance and the effective date thereof considered postponed, if necessary, until such time as matter is adjusted or determined through grievance or arbitration; provided, however, that the Union must exercise its right to question the Employer's action within the prescribed time

MELOHN 00435

referred to above and in Section 2 below, and provided, further, that the matter in processed with reasonable promptness in grievance and/or arbitration as the case may be.

2. The Employer, by written notice served personally or by reaisted mail, may require the Superintendent to vacate his living premises immediately in exceptional cases where the continued presence of the Superintendent might jeopardize the tenants, employees, or the building and where the proper operation of the building necessitates the immediate employment of a replacement superintendent; the Union may question the termination of the Superintendent's services through the grievance and/or arbitration procedures described above, by filing a grievance with seven (7) calendar days following the receipt by the Superintendent of the notice to vacate.

3. The provision for arbitration of discharge shall not be applicable for the first six (6) months of a Superintendent's employment. For grievance arising during the said six (6) months, the presentation period referred to in Article XXV shall be (240) days, except as otherwise provided herein.

4. Any Superintendent resigning because of physical or mental inability to perform his duties his duties shall receive, in addition to his accrued vacations credits, termination pay according to years of service in the building on the following basis:

| Superintendent with: | | | |
|---|---|---|---|
| 3 and less than 5 years.....................1 week's pay | | 10 and less than 12 years.............5 week's pay | |
| 5 and less than 10 years...................3 week's pay | | 12 years and over......................9 week's pay | |

A Superintendent who is physical or mentally unable to perform his duties may resign and receive the above termination pay provided he submits satisfactory evidence of such inability. In the event the Employer does not deem the evidence satisfactory, such question may be submitted to grievance and arbitration.

MELOHN 00436

# Exhibit "27"

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. (516) 837-7000 |
|---|---|
| 4750 Realty LLC c/o Abro Management | c. Cell No. |
| | f. Fax No. (516) 374-7508 |
| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | g. e-Mail |
| 734 West Broadway | Martin Scharf /Issac Widroff | mail@abromgmt.com |
| Woodmere, New York,  11598 | | h. Number of workers employed 4 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service | |
| Residential Building | Residential Building | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)  8 (a)(5)   of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Unfair Labor Practice
Employer terminated four (4) union workers without notification and "just cause" forcing them off the work site on
Thursday 7/3/14.  Management bought in their own workers to replace Local No. 2 union employees/members.
Union was notified on 7/3/2014 by union workers that this  action
was taken because they refused employers solicitation to  remove support of Local No. 2 union.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Local No. 2 Building Service Employees & Factory Workers, USWU, IUJAT

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. (718) 296-7017 |
|---|---|
| 82-01 Rockaway Blvd., Suite 130 | 4c. Cell No. |
| Ozone Park, NY 11416 | 4d. Fax No. (718) 296-4877 |
| | 4e. e-Mail nyslocal2@aol.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)   United Service Workers Union, International Union Journeymen Allied Trades

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _(signature of representative or person making charge)_ | Mary Clayton, Vice President _(Print/type name and title or office, if any)_ | Tel. No. (718) 296-7017 |
|---|---|---|
| | | Office, if any, Cell No. |
| | | Fax No. (718) 296-4877 |
| Address 82-01 Rockaway Blvd., Suite 130 | 7/3/2014 _(date)_ | e-Mail nyslocal2@aol.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

MELOHN  00437

EXHIBIT
27
PENGAD 800-631-6989
Redzepagic
1/8/16 pw

# Exhibit "28"



# LOCAL NO. 2

Building Service Employees and Factory Workers USWU, IUJAT

CertifiedMailIRR7013225000015143341

September 11, 2014

General Counsel
Office of Appeals
National Labor Relations Board
1099 14th Street, N.W. – Room 8820
Washington, D.C. 20570

Attn:  Mark E. Arbesfeld, Deputy Director - Office of Appeals

Re: Case No. 29-CA132185

Dear Mr. Arbesfeld:

Enclosed is the Appeal from Local 2 Building Service Employees and Factory Workers USWU, IUJAT pertaining Case No. 29-CA132185, faxed on September 9, 2014.

We would appreciate your assistance in the review of this case.

Sincerely,

Mary Clanton, Vice President

/mc

c: C. Stuart
   K. Hertz, Esq.

Enc.(1)



**EXHIBIT** 28
Redzepagic
1/8/16 ew

**82-01 Rockaway Blvd, Ozone Park, NY 11416- Suite 130- (718) 296-7017 – Fax( 718) 296-4877 - Email:nyslocal2@aol.com**

MELOHN   00438

FORM NLRB-4767
(7-03)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

APPEAL FORM

Date: 9/9/14

To: General Counsel
Attn: Office of Appeals
National Labor Relations Board
Room 8820, 1099 14th Street, N.W.
Washington, D.C.  20570

Please be advised that an appeal is hereby taken to the General Counsel of the National Labor Relations Board from the action of the Regional Director in refusing to issue a complaint on the charge in

CASE# 29-CA132185 - 4750 Realty LLC c/o Abro Management

Case Name(s).

_____

Case No(s). (If more than one case number, include all case numbers in which appeal is taken.)

Tiffany Claxton
(Signature)

See Attached
Appeal Document

MELOHN 00439

<u>CASE 29-CA132185</u>

- Employer violated Weingarten Rights on July 3, 2014 when employees were termination.

- Employer Refusal and Failure to Provide Local 2 Building Services and Employees and Factory Workers Union with Proof of Ownership of Property.

- Bad Faith Bargaining – Union and New Employer were in Active Negotiation prior to terminating the employees on July 3, 2014.

- Three (3) Employees were terminated and only two (2) employees were interviewed at the NLRB.

- Employer made fraudulent statement to NLRB pertaining 32BJ Union Worker – present (Superintendent at the building), and written statement pertaining Manuel Fernandez (Porter)

MELOHN 00440