UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEFKET REDZEPAGIC, on behalf of
himself and others similarly situated,

                          Plaintiff,

          – against –

ROBERT HAMMER, MELOHN
PROPERTIES INC., THE MELOHN
GROUP LLC, L 4750, LLC,
A 4750, LLC, 4750 BEDFORD LLC.,
LEON MELOHN, ALFONS MELOHN,
AND JOHN DOES #1-10, jointly and
severally,
                          Defendants.

**OPINION AND ORDER**

14 Civ. 9808 (ER)

Ramos, D.J.:

 Plaintiff Sefket Redzepagic ("Plaintiff) brings this action claiming violations of the Fair

Labor Standards Act (FLSA) for Defendants' failure to pay overtime wages.[1]  Defendants

counterclaim for breach of contract, alleging that Plaintiff signed a release and waiver of all

claims—including any FLSA claims—in connection with his termination as a residential

superintendent.  Doc. 43 at 9-14.  Defendants seek dismissal of Plaintiff's FLSA claims as well

as an order granting judgment to Defendants on their counterclaim.  Doc. 70 at 1.[2]

 For the reasons discussed below, the Court GRANTS in part and DENIES in part

Defendants' motion for summary judgment.

---

[1] The Court refers to Melohn Properties Inc. ("Melohn"), The Melohn Group LLC, L 4750 LLC, A 4750 LLC, 4750
Bedford L.L.C., Leon Melohn, and Alfons Melohn collectively as "Defendants."

[2] In the alternative, Defendants request that Plaintiff's jury demand be struck pursuant to Rule 12(f).  *Id.*

## I. BACKGROUND

Plaintiff was employed by Melohn Properties, Inc. ("Melohn") as the superintendent of a residential building located at 4750 Bedford Avenue, Brooklyn, New York from January 1, 1993 until July 2, 2014.  Defendants' Rule 56.1 Statement ("Defs.' 56.1 Stmt.") (Doc. 71) ¶ 1.  During the period from 2012-2014, the managing agent at the building was Andrew Melohn.  *Id.* ¶ 9. Prior to Andrew Melohn, the managing agent was Robert Hammer.  *Id.* ¶ 10.

Plaintiff and other employees who worked at the building were covered by a collective bargaining agreement ("CBA") entered into between Melohn and Local 2 of the Building Service Employees & Factory Workers.  *Id.* ¶ 14.  Under the terms of the CBA, Plaintiff received a number of benefits, including the payment of overtime as follows:

> The standard workweek shall be (40) hours consisting of five (5) consecutive workdays of eight (8) hours per day.  Any hour worked in excess of eight (8) hours per day or forty (40) hours in a week shall be paid at the rate one and one half the hourly rate.

*Id.* ¶ 15 (citing Melohn Affidavit ¶ 13; Exhibit 26 at 1).  The CBA also contained provisions related to holiday overtime and vacation.  Plaintiff's regular work hours were from 9:00 a.m. to 5:00 p.m. Monday to Friday.  *Id.* ¶ 86.  He was also required to respond to emergencies during his off-hours.  *Id.* ¶¶ 16-18, 20 (citing Melohn Affidavit ¶ 13; Exhibit 26 at 10) ("In all other respects, the present practice of the building with regard to the duties of the superintendent shall be continued, and, as heretofore, the superintendent shall take care of all emergencies."). Plaintiff, as superintendent, received a rent-free apartment, free utilities, and a free parking spot. *Id.* ¶ 21.

Each week Plaintiff submitted a report to Melohn's Assistant Controller, Joseph

Gottlieb, which set forth the hours that he and the other employees worked.  *Id.* ¶ 33.[3]  Plaintiff

avers that during the period from 2011 to the end of his employment in 2014, he worked between

four and fifteen overtime hours each week.  Affidavit of Sefket Redzepagic ("Pl. Aff.") (Doc. 73,

Ex. 1) ¶ 5.  However, he did not report the overtime hours that he worked on most of the

timesheets he submitted.  Defs.' 56.1 Stmt. ¶¶ 36-37.  Plaintiff states that he was directed by

Defendants to report only 40 hours of work each week regardless of the number of hours he

actually worked, unless he received advance approval for certain projects.  Pl. Aff. ¶ 8.

Additionally, on several occasions between January 2012 and June 2014, Plaintiff texted Andrew

Melohn regarding overtime hours he put in to do additional work on the premises.  Defs.' 56.1

Stmt. ¶¶ 52-53; *see also* Affidavit of Mark N. Reinharz, Exhibit 1 (Doc. 69-6–69-10) ("Text

Messages").[4]  All of the information regarding the repairs Plaintiff performed were kept on

worksheets, which Plaintiff kept in his office.  Defs.' 56.1 Stmt. ¶ 114.  However, a new owner,

ABRO, purchased the building in July 2014, and in September 2014, ABRO discarded the

worksheets.  *Id.* ¶¶ 78, 83.

After the sale of the building, ABRO advised the employees that they would not be

retained.  *Id.* ¶ 151.  The union immediately filed an unfair labor practice charge against ABRO

with the National Labor Relations Board.  *Id.* ¶ 156.  On July 3, 2014, ABRO provided Plaintiff

with a written offer of $50,000 to leave the building and cease employment, and Plaintiff

subsequently made a counter offer of $100,000.  *Id.* ¶¶ 157, 159.  During this time period,

---

[3] Based on the record before the Court, it appears these payroll sheets were only used and submitted between 2010 and 2014.  *See* Affidavit of Sefket Redzepagic ("Pl. Aff.") (Doc. 73, Ex. 1) ¶ 8.

[4] Plaintiff no longer has any text messages between himself and Melohn because he transferred his phone to his wife and everything on the phone was deleted.  *Id.* ¶¶ 65-69.  This occurred after the litigation commenced.  *Id.*  The text messages in the record were provided by Andrew Melohn, and he states that he preserved all of the text message communications he had with Plaintiff.  *See* Affidavit of Andrew Melohn ("Melohn Affidavit") (Doc. 69-1) ¶ 34.

Plaintiff spoke with the union, which advised him that he should not accept the offer.  *Id.* ¶ 162.

On or about July 10, 2014, Plaintiff advised his union representative that he was offered $75,000

to leave his position and that he would also receive unemployment benefits.  *Id.* ¶¶ 164.  Plaintiff

ultimately accepted the $75,000 offer.  *Id.* ¶ 168.

On September 3, 2014, Plaintiff signed a severance agreement ("Agreement") with

ABRO that included a release of all claims against both ABRO and Melohn, including claims

under the New York Labor Law and the Fair Labor Standards Act.  *Id.* ¶ 170.  Section Five of

the Agreement provides:

> In consideration of ABRO's payment of the Settlement Payments as well as its
> agreement to permit the Employee to continue to occupy the Unit to the date
> specified … the Employee … does fully and forever release and discharge ABRO
> MANAGEMENT, INC, 4750 REALTY LLC, and MELOHN PROPERTIES,
> including its and their past and present members, officers, directors, partners,
> agents, representatives, employees, attorneys, successors, and assigns … from any
> and all actions, claims, demands, losses, expenses, obligations, and liabilities
> related to any conduct or activity occurring before the Effective Date hereof,
> including but not limited to … those pursuant to the Fair Labor Standards Act of
> 1938, as amended and the New York Labor Law, and any other claim for
> compensation for work, labor, or services …

Agreement at 4-5.[5]  Although the release provision purports to cover Melohn, the prior owner,

and its employees, neither Melohn nor its employees were involved in the negotiation of the

Agreement between Plaintiff and ABRO.  Defs.' 56.1 Stmt. ¶ 179.  In fact, Melohn was not

aware of the Agreement until after this litigation began.  *Id.* ¶ 180.

Plaintiff understood that he had the right to speak with an attorney prior to signing, *id.* ¶

17; however, he testified that when he asked to take the Agreement to a lawyer for review, the

ABRO representative told Plaintiff, "No, don't worry about it.  We have a lawyer.  He's going to

---

[5] A copy of the Agreement is included as Exhibit 25 to the Affidavit of Mark N. Reinharz in support of Defendants'
summary judgment motion.  Doc. 69.  Citations to the Agreement refer to the original pagination as it appears on the
bottom center of each page.

do all the paperwork.  All you have to do is just sign."  Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") (Doc. 75) ¶ 196.  Under the terms of the settlement, Plaintiff was given seven days to revoke the Agreement, but did not do so.  *Id.* ¶ 175.

## II.  PROCEDURAL HISTORY

Plaintiff commenced this lawsuit in December 2014 claiming violations of New York Labor Law (NYLL) and the FLSA.  *See* Complaint (Doc 1).  His state law claims were later withdrawn, *see* Doc. 31, and Defendants counterclaimed for breach of contract.  Doc. 43 at 9-14.

## III.  LEGAL STANDARD

 Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c)(1)(A).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient

for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23; *see also* Fed. R. Civ. P. 56(c)(1)(B).  The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## IV.  DISCUSSION

### A.  Waiver of Plaintiff's FLSA Claim

Defendants argue Plaintiff's FLSA claim is barred because he knowingly signed the Agreement in which he released the Defendants of all claims, including specifically those asserted under the FLSA. Doc. 70 at 4-5. The FLSA was designed "to correct and as rapidly as practicable to eliminate" the practice of employers failing to pay their employees proper wages. 29 U.S.C. § 202(b). "The FLSA places strict limits on an employee's ability to waive claims for fear that employers would coerce employees into settlement and waiver." *Armenta v. Dirty Bird Grp.*, LLC, No. 13 Civ. 4603 (WHP), 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) (internal quotations and citation omitted); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016) (noting the FLSA "is a uniquely protective statute" designed "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees."). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 740, 101 S. Ct. 1437, 1445 (1981) (quoting

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902 (1945)).  Recognizing

that there are often great inequalities in bargaining power between employers and employees,

Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to

negotiation or bargaining between employers and employees.  *Brooklyn Savings Bank*, 324 U.S.

at 707.

There are two ways in which wage claims arising under the FLSA can be settled or

compromised.  First, under section 216(c), the Secretary of Labor is authorized to supervise

payment to employees of unpaid wages owed to them.  29 U.S.C.A. § 216(c).  Second, when

employees bring a private action to recover back wages under the FLSA and present a proposed

settlement to the district court, "the district court may enter a stipulated judgment after

scrutinizing the settlement for fairness." *Joo v. Kitchen Table, Inc*., 763 F. Supp. 2d 643, 644

(S.D.N.Y. 2011) (internal quotations and citation omitted); *see also* 29 U.S.C.A. § 216(b).

Here, the Agreement falls into neither recognized category for settlement of FLSA

claims.  The Agreement cannot be approved under section 216(c) because it was not negotiated

or supervised by the Department of Labor; and because the Agreement was not entered as a

stipulated judgment in an action brought against Defendants by its employee, the Agreement

cannot be approved under existing case law.  *See, e.g., Wolinsky v. Scholastic Inc.,* 900 F. Supp.

2d 332, 335 (S.D.N.Y. 2012) ("[A]n employee may not waive or otherwise settle an FLSA claim

for less than the full statutory damages unless the settlement is supervised by the Secretary of

Labor or made pursuant to a judicially supervised stipulated settlement."); *see also Bodle v. TXL*

*Mortg. Corp*., 788 F.3d 159, 165 (5th Cir. 2015) (where plaintiffs executed waiver of FLSA

claims in prior state court settlement related to employee's noncompetition covenant, agreement

could not waive FLSA claims "because not only did the prior state court action not involve the

FLSA, the parties never discussed overtime compensation or the FLSA in their settlement negotiations"); *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (finding waiver invalid where employees entered into agreement waiving "any claim for compensation arising under the FLSA" without attorney representation and noting that to "approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.").

Accordingly, Plaintiff's purported waiver of his FLSA rights in the Agreement—which was neither administratively supervised by the Secretary of Labor nor judicially approved by means of a stipulated judgment between the employee and the employer—is not enforceable to bar Plaintiff's cause of action under the FLSA. [6]

## B. FLSA Overtime Violations

Defendants further argue that Plaintiff has failed to carry his burden to recover unpaid overtime under the FLSA and that no reasonable inference can be drawn to credit his claims of overtime. *See* Doc. 70 at 8-15. To establish liability for unpaid overtime under the FLSA, an employee must prove that he "performed work for which he was not properly compensated, and

---

[6] Defendants ask the Court in the alternative to schedule a "fairness hearing" to evaluate the Agreement, citing an 11th Circuit case that considered whether a settlement agreement related to a "bonafide dispute over FLSA provisions" was fair and reasonable. *See* Doc. 70 at 6 (citing *Rakip v. Paradise Awnings Corp.*, 514 Fed. Appx. 917, 919-20 (11th Cir. 2013). Here, the waiver at issue was not related to an FLSA or wage dispute, but instead involved a separation agreement, a matter that did not involve the FLSA. There is no evidence that the parties discussed overtime compensation during their settlement negotiations, and Plaintiff was not represented by counsel. No fairness hearing is necessary under these circumstances.

that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

An employer is required to maintain records of wages and hours, and if he fails to do so, an employee "will not be penalized due to [his] employer's record-keeping default." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997).  At summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present "sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)) (internal quotations omitted).  "[A]n employee's burden in this regard is not high." *Kuebel*, 643 F.3d at 362.

In the absence of sufficient records, an employee may meet his burden by testifying as to his own recollection of the hours worked.  *Id.*  ("It is well settled among the district courts of [the Second] Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection.").  The burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Reich*, 121 F.3d at 69 (internal quotation marks and citation omitted).

Here, as in *Kuebel*, the Plaintiff, for at least some period of time, was responsible for filling out his own timesheets, and therefore any inaccuracies in overtime not reported on these timesheets were his own inaccuracies.  *See* 643 F.3d at 362.  However, as the Second Circuit noted in *Kuebel*, an employer's duty under the FLSA to maintain accurate records is non-delegable and "at least where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the

10

employee physically entered the erroneous hours into the timesheets." *Id.* at 362-63.  Plaintiff's affidavit—which must be credited at the summary judgment stage—was that he did not report more time because his managers—including Robert Hammer and Andrew Melohn—specifically instructed him not to record more than forty hours per week unless he received prior approval from them.  Pl. Aff. ¶ 7-8; *see also Kuebel*, 643 F.3d at 363 ("While ultimately a factfinder might or might not credit this testimony [that his managers told him not to record overtime], that is a determination for trial, not summary judgment.").  Plaintiff states that he only received prior approval to report overtime in extreme circumstances, such as during Hurricane Sandy or large blizzards, and that when he reported to his managers that he was working more than 40 hours a week, they told him that he was not entitled to overtime because he received an apartment in the building.  Pl. Aff. ¶ 7-8.

Plaintiff asserts claims related to two distinct categories of overtime work:  (1) time spent performing additional repairs beyond eight hours a day; and (2) time spent "on call," during which he remained at the building in case of emergency.  The Court considers each in turn.

### 1.  Additional Hours Worked

As it relates to overtime spent performing repairs, the Court finds Plaintiff has presented sufficient evidence for a reasonable jury to conclude that he has shown the amount of his uncompensated work "as a matter of just and reasonable inference."  *Anderson*, 328 U.S. at 687.  For example, in his declaration, he estimates that he worked between 4 to 15 hours of overtime each week, depending on the circumstances.  Pl. Aff. ¶ 5.[7]  While this evidence is not precise,

---

[7] Defendants further argue that inconsistencies regarding time worked between Plaintiff's deposition testimony and affidavit warrant summary judgment.  Doc. 77 at 5-6.  Specifically, Plaintiff testified in his deposition that sometimes he worked late two straight days a week, sometimes three days in a row, sometimes more, and that his overtime each week "would be at least maybe 20 to 30 hours…sometimes less; sometimes more."  Deposition of Sefket Redzepagic ("Pl. Dep.") (Doc 73-2) at 87:22-88:7.  His affidavit, however, provides figures of "2 to 5 hours, 2 to 3 days a week."  Pl. Aff. ¶ 5.  Additionally, the Third Amended Complaint, Rule 26 disclosures, and verified

Plaintiff's burden under *Anderson* and *Kuebel* is not arduous.  Additionally, the text messages between Plaintiff and Andrew Melohn lend further support to Plaintiff's claims.  For instance, the text message records indicate, *inter alia*, that:

- On Monday, April 23, 2012 Plaintiff advised Andrew Melohn that there was a water leak the previous day.  Text Messages at 00250.
- On Sunday November 25, 2012 Plaintiff reported that Normandy Pump installed a new pump on Saturday, but that the pump was not working.  Plaintiff also reported that the plumber was present trying to fix the issue.  *Id.* at 00265.
- On Wednesday, December 5, 2012, Plaintiff advised Andrew Melohn about problems with the boiler and that he had called Control Combustion to fix the problem.  *Id.* at 00266.
- On Tuesday February 12, 2013, Plaintiff contacted Melohn about a lighting problem and whether he should contact an outside contractor to repair the lights.  *Id.* at 00272.  Plaintiff then stated "I am gonna try to fix it my self [sic] if I can."  *Id.*
- On Tuesday August 13, 2013, Plaintiff advised Melohn that Bonzeer Plumbers came to the building and fixed the shut off valve.  *Id.* at 00291.
- On Tuesday, November 26, 2013, Plaintiff advised Melohn that he called a plumber and the plumber was presently fixing a steam leak.  *Id.* at 00299.
- On Sunday January 5, 2014, Plaintiff advised Melohn that the gravity tank was leaking, and Plaintiff called the plumber on the following Monday.  *Id.* at 00304.
- On Monday March 31, 2014, Plaintiff advised Melohn of a gas leak and that the building was running on oil.  *Id.* at 00309.[8]

Defendants dispute the significance of these text messages, noting that Plaintiff does not say *he* performed any additional work in the messages, and that simply calling or texting a contractor for assistance is *de minimis* activity and therefore non-compensable.  Doc. 77 at 7n.3.[9]

---

interrogatory responses also provide different total hours worked.  *See* Doc. 77 at 6.  However, Plaintiff did not disclaim working overtime.  Rather, the inconsistencies concern only the number of overtime hours, not whether he worked overtime at all.

[8] Plaintiff claims that the repairs outlined in these text messages occurred on the weekend or after normal working hours.  *See* Doc. 74 at 10-11.

[9] Defendants also argue that spoliation sanctions are appropriate for Plaintiff's deletion of the text messages after the lawsuit commenced because there is a "very strong inference that the information Plaintiff had would support Defendant's position."  *See* Doc. 70 at 18.  Defendants request a dismissal of the case asking that the Court "preclude Plaintiff from going forward."  *Id.* at 17.  However, Defendant has submitted Andrew Melohn's affidavit, which indicates that he preserved all of the text message communications he had with Plaintiff.  Melohn Affidavit ¶ 34.  Therefore, because these documents were preserved by an employee of Melohn and were available to both

Plaintiff argues that he was not simply alerting Melohn of these issues, but that on these instances he responded to the issues and worked onsite to supervise the contractors.  *See* Doc. 74 at 10-11.  Viewing these records in the light most favorable to Plaintiff, it is reasonable to infer that Plaintiff performed overtime work for which he was not compensated.  Thus, the Court concludes that Plaintiff has met his initial burden and that the burden shifts to Defendants to present evidence that either demonstrates the precise amount of work he performed or negates the reasonableness of the inference.  *See Kuebel*, 643 F.3d at 364.  Ultimately, the dispute as to the precise amount of Plaintiff's uncompensated work is one of fact for trial.  *Id.*  Accordingly, Defendants' motion for summary judgment on this issue is DENIED.

### 2.  Additional Hours Spent "On Call"

Plaintiff maintains that he was required by Defendants to live and remain at the building, that this on-call time was performed outside of his scheduled hours, and that it is compensable under the FLSA.  Doc. 74 at 12.  Further, Plaintiff argues that whether the on-call time was compensable under the FLSA is an issue for trial that cannot be resolved on summary judgment.  *Id.*[10]

---

parties in the action, there is no reason to infer that the text messages Plaintiff deleted would support Defendants' position.  Defendants also seek spoliation sanctions related to the loss of the worksheets Plaintiff kept in his office that were discarded by the building's new owners.  *See* Doc. 70 at 16.  The Court declines to impose sanctions or grant an adverse inference against Plaintiff.  It is unclear why Defendants suggest that it was Plaintiff's burden to maintain these documents after his termination, as they relate to work performed on the premises, were stored on the premises, were under the custody and control of ABRO, and therefore were presumptively ABRO's documents.  Indeed, pursuant to the Agreement, Plaintiff was required to return all of ABRO's property, including documents.  Agreement ¶ 9 ("The Employee agrees and represents that he has returned to ABRO all equipment and/or property, and all other information in tangible form belonging to it which has been or is in his care, custody, possession or control during his employment with Melohn, including specifically, without limitation, any documents … memoranda and/or files in whatever form … and that he has retained no copies of any such information.").

[10] Defendants also argue that claims relating to on-call time fail because Plaintiff admitted at his deposition that the only overtime he is entitled to is the time he spent on repairs, and that Plaintiff admitted in his Rule 56.1 Response that he so testified at his deposition.  *See* Doc. 77 at 7-9.  However, the Court does not construe this testimony as a legal admission when considered with Plaintiff's deposition testimony that he was required to be on call, feared

The U.S. Department of Labor's regulations promulgated under the FLSA provide that "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17. Courts have consistently held that on-call time can constitute compensable work under the FLSA. *See, e.g., Armour & Co.*, 323 U.S. at 133 ("Readiness to serve may be [compensable], quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (employees may seek compensation for time spent on call where their employer restricts their ability to use time freely for their own benefit); *Nonnenmann v. City of New York*, No. 02 Civ. 10131 (JSR)(AJP), 2004 WL 1119648, at *26 (S.D.N.Y. May 20, 2004) (same).

"[T]he determination of what constitutes work is necessarily fact-bound." *O'Neill v. Mermaid Touring, Inc.*, 968 F. Supp. 2d 572, 581 (S.D.N.Y. 2013) (citing *Armour & Co.*, 323 U.S. at 133 ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.")). For example, in *Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002), the plaintiff claimed that he was required by his employers to work as a maintenance man for a hotel essentially seven days a week and 24 hours per day without receiving overtime pay. *Id.* at 203. Following a bench trial, the Court concluded that Moon was entitled to overtime pay for the evening hours, but not for the overnight periods. *Id.* at 229-30. The Court held that Moon's "waiting time" during the evening hours was of a different nature than the nighttime hours—his work during the evenings was

---

getting fired if he did not work after hours, and that he was told he had to remain in the building. *See* Redzepagic Dep. at 222-227.

much more frequent than during the night, and the periods of inactivity during the evenings were considerably shorter, making it far more difficult for him "to use the time effectively for his own purposes." *Id.* at 230 (citing 29 C.F.R. § 785.15). However, in *Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 WL 4944767, after a two day bench trial, the Court considered whether the plaintiff hotel employee was "engaged to wait, which is compensable, or merely waiting to be engaged, which is not compensable" and determined that the plaintiff was entitled to compensation for the full time he was required to be on the premises, including night hours. *Id.* at * 12 (internal quotation marks omitted). The Court noted that the facts of the case were different than in *Moon* because the plaintiff was required to remain on the hotel premises during the night, and the specific restrictions on the plaintiff's freedom entitled plaintiff to compensation for the full time he was required to be on the premises. *Id.* In both cases, the Court engaged in a fact-specific inquiry to determine whether the restrictions on the plaintiffs' freedoms required compensation under the FLSA.

The Court finds that questions of fact preclude any determination at the summary judgment stage concerning how much of Plaintiff's on-call time—if any—is compensable. *See, e.g., Mermaid Touring Inc.*, 968 F. Supp. 2d at 582 (denying summary judgment because "questions of fact preclude any determination at this time concerning how much of Plaintiff's 'on-call' time constitutes 'work' within the meaning of the FLSA" where Plaintiff was personal assistant to entertainer and alleged she was on call "every hour of every day"). Here, there is conflicting evidence as to whether Plaintiff was able to use this time for personal use. For instance, in 2006, Robert Hammer sent a letter to Plaintiff when it was suspected that Plaintiff was dividing his time between Brooklyn and Suffolk County reminding him that he was "required to be available for emergencies even when off-duty" and that he "must sleep in the

15

building each night, including week-ends …"  *See* Doc. 73 Ex. 4.  While Defendants point to evidence that shows Plaintiff was able to use on-call time for his own purposes—including Plaintiff's deposition testimony that he was able to watch TV, use the computer, go to the gym, and run errands—an issue of material fact remains as to how much time spent on the premises constitutes work in light of any restrictions on Plaintiff's freedom.  *See* Doc 77 at 8 (citing Redzepagic Dep. at 222, 225, 226).

Defendants have not demonstrated that they are entitled to judgment as a matter of law, and therefore the motion for summary judgment as it relates to the on-call claims is DENIED.

## C.  Defendants' Counterclaim

Defendants argue that by commencing this action—which initially included claims under state law—Plaintiff breached the Agreement.[11]  Specifically, Defendants argue that unlike the FLSA, labor law claims are not required to be reviewed or approved by a Court, and so any breach of the waiver provision with respect to filing a lawsuit alleging labor law claims warrants judgment in favor of the Defendants on the counterclaim.  *See* Doc. 70 at 5.  Defendants further

---

[11] The Court has ruled that the FLSA waiver provision is unenforceable to bar Plaintiff's cause of action, but because the state law claims no longer remain in the case, the Court did not consider whether the remainder of the release was enforceable to release Defendants from liability under state law.  Unlike the FLSA, NYLL has no requirement that any such agreement be reviewed by a Court and private settlements are not prohibited.  *See Simel v. JP Morgan Chase*, No. 05 Civ. 9750 (GBD), 2007 WL 809689, at *5 (S.D.N.Y. Mar. 19, 2007) ("The New York State law provisions on which defendant's claims rely do not contain express provisions restricting the private settlement of claims or waiver of statutory rights.").  While the parties do not point to the terms of the Agreement in regards to the severability of the FLSA waiver, the Court notes that the Agreement contains a severability clause stating that if a provision is held to be unenforceable, this unenforceability will have no effect on the other provisions of the Agreement.  Agreement ¶ 16; *see also F & K Supply Inc. v. Willowbrook Dev. Co.*, 288 A.D.2d 713, 716, 732 N.Y.S.2d 734, 738 (2001) ("Whether a contract is entire or severable generally is a question of intention, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted.") (citation omitted).  Defendants seek to enforce the provisions of the contract related to attorneys' fees for breaches related to the NYLL violations.  Plaintiff's initial Complaint, First Amended Complaint, and Second Amended Complaint all asserted claims against the Defendants under both the FLSA and NYLL.  *See* Docs. 1, 11, 23.

seek attorneys' fees under the provision in the Agreement providing that "in the event of any litigation to enforce the provisions of this Severance and Settlement Agreement and General Release, the prevailing party shall be awarded his or its reasonable attorneys' fees and costs." Agreement ¶ 17.  Plaintiff argues that the counterclaim fails because Defendants were not a party to the Agreement between Plaintiff and ABRO, and Defendants have not shown that they were intended third party beneficiaries to the Agreement, including the provision regarding attorneys' fees.  Doc. 74 at 4-6.[12]

To succeed on a third-party beneficiary theory under New York law, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed. *Madeira v. Affordable Housing Foundation, Inc*., 469 F.3d 219, 252 (2d Cir. 2006).  "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"  *State of California Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434, 741 N.E.2d 101, 104 (2000) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336, 451 N.E.2d 459, 469 (1983)).  Moreover, a party claiming to be a third-party beneficiary "has the burden of demonstrating that he has an enforceable right."  *Alicea v. City of New York,* 145

---

[12] Plaintiff also argues that even assuming *arguendo* that Defendants are intended third party beneficiaries to the release and attorneys' fees provision, Defendants' counterclaim should nonetheless be dismissed because Defendants have not been damaged by any purported breach related to NYLL because Defendants asserted their counterclaim after the NYLL claims were dismissed by joint stipulation, and therefore Defendants have not engaged in any litigation to enforce the provisions of the Agreement related to NYLL.  *See* Doc. 74 at 6.  Because the Court finds that the Agreement does not evidence an intent to permit enforcement of the attorneys' fees provision by the Defendants as beneficiaries of the contract, the Court need not determine the damages issue.

A.D.2d 315, 317, 534 N.Y.S.2d 983 (1st Dep't 1988 (citing *Strauss v. Belle Realty Co*., 98

A.D.2d 424, 469 N.Y.S.2d 948 (2d Dep't 1983)).

      In determining whether a third-party beneficiary exists, courts look at the surrounding

circumstances as well as the agreement.  *Noveck v. PV Holdings Corp.*, 742 F. Supp. 2d 284, 296

(E.D.N.Y. 2010), *aff'd, appeal dismissed sub nom. Noveck v. Avis Rent A Car Sys., LLC*, 446 F.

App'x 370 (2d Cir. 2011) (citing *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d

675, 679 (2d Cir. 1989)); *see also Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F.

Supp. 2d 360, 368 (S.D.N.Y. 2007) (noting that under New York law, courts look to the intent of

the parties when determining whether an entity qualifies as a third party beneficiary).  The "best

evidence . . . of whether the contracting parties intended a benefit to accrue to a third party can

be ascertained from the words of the contract itself."  *Alicea*, 145 A.D.2d at 318.  However, "it is

well-settled that the obligation to perform to the third party beneficiary need not be expressly

stated in the contract."  *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d

566, 573 (2d Cir. 1991).  "An intent to benefit a third party can . . .  be found when no one other

than the third party can recover if the promisor breaches the contract . . . or . . . the language of

the contract otherwise clearly evidences an intent to permit enforcement by the third party."

*Alicea,* 145 A.D.2d at 318 (internal quotations omitted).

      Defendants do not qualify as intended third-party beneficiaries.  First, Defendants are not

the only parties that can recover under the Agreement, if they can recover at all.  Indeed, ABRO,

as a party to the contract, has the right to enforce against breach.  Second, Defendants cannot

point to contractual language or other facts "sufficient to give rise to a plausible inference" that

the Agreement—specifically the provision related to attorneys' fees—"clearly evidence[s] an

intent to permit enforcement" by them.  *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*

*Inc.*, 651 F. Supp. 2d 155, 185 (S.D.N.Y. 2009). It is undisputed that Melohn was neither

involved in the negotiation of the settlement between Plaintiff and ABRO nor a signatory to the

Agreement. Defs.' 56.1 Stmt. ¶ 179. The Agreement refers to Melohn generally as Plaintiff's

former employer, *id.* at 1-2, and also references Melohn in Section Five, which purports to

release all claims against ABRO, Melohn, and the companies' employees and representatives.

*Id.* at 4. Accordingly, Defendants cannot rely on the Agreement.

In any event, the attorneys' fees and costs provision contained in Section 17—and on

which Defendants rely in their counterclaim—does not reference Melohn or its agents as the

release provision does, and states in full:

> As further mutual consideration for the promises set forth herein, the parties agree
> that they each are responsible for their own attorneys' fees and costs, if any, and
> agree that he/it will not seek reimbursement from the other party for attorneys' fees
> and/or costs incurred in this matter relating to any matters addressed in this
> Severance Agreement and General Release, except as hereinbefore specified. In
> the event of any litigation to enforce the provisions of this Severance and Settlement
> Agreement and General Release, the prevailing party shall be awarded his or its
> reasonable attorneys' fees and costs.

*Id.* at 12.

Section 17 references the "mutual consideration for the promises set forth herein," but

there is no consideration on the part of the Defendants—the only consideration conceivably

referenced in this clause is as between Plaintiff and ABRO. Therefore, the language of the

Agreement does not evidence an intent to permit enforcement of Section 17 by the Defendants as

beneficiaries of the contract, and Defendants do not have an enforceable right to do so.

Furthermore, Defendants have failed to identify any meetings, correspondence, or any other

indication of intent to suggest that Melohn was an intended beneficiary. On the contrary,

Melohn was not even aware of the settlement and release signed by Plaintiff until after this litigation began.  Melohn Affidavit ¶ 45.[13]

Therefore, without more, the Court DENIES Defendants' motion for summary judgment on their counterclaim and dismisses the counterclaim as a matter of law.[14]

### D.  FLSA Claims Against Individual Defendants Alfons and Leon Melohn

Defendants also move to dismiss Plaintiff's claims as to Alfons and Leon Melohn (collectively the "Individual Defendants") on the basis that they were not Plaintiff's employer under the FLSA.  Doc. 70 at 24.  The FLSA creates liability for any "employer" who violates its terms and an "employer" is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA's definition of "employer" may apply to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," 29 U.S.C. §§ 203(a), (d), and the Department of Labor regulations state that an individual may be employed by more than one employer. 29 C.F.R. § 791.2(a).  "Because the statute defines employer in such broad terms,

---

[13] Defendants argue in the alternative that the provision in the Agreement regarding waiver of jury trial applies to the instant litigation.  Doc. 70 at 7.  For the same reasons, the provision regarding waiver of a jury trial only applies to the parties to the contract, and Defendants have not met their burden to demonstrate they were third party beneficiaries.  *See* Agreement § 16 ("The parties hereto…waive any right to trial by jury…").

[14] Although Plaintiff does not formally style their opposition as a cross-motion for summary judgment, Plaintiff requests that Defendants' counterclaim be dismissed.  *See* Doc. 74 at 4-8.  Summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.  *See Ramsey v. Coughlin*, 94 F.3d 71, 73 (2d Cir. 1996) ("However, it is generally established that 'the trial court is not precluded from entering summary judgment for the non-movant if, in reality, no factual dispute exists and the non-movant is entitled to summary judgment as a matter of law.'") (citing 6 James W. Moore, Moore's Federal Practice ¶ 56.12); *see also Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Am. v. Mason Tenders Dist. Council of Greater N.Y.*, 291 F.2d 496, 505 (2d Cir. 1961) ("[I]t is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment.").  Here, Defendants have had an adequate opportunity to show that a genuine factual dispute remains or to address the argument in their reply memorandum, *see* Doc. 77 at 2-3, and the Court finds Defendants' arguments unpersuasive.

it offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999). "In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Id.* (internal citations omitted).

The question of whether an individual is an employer under the FLSA is a mixed question of law and fact and individual employer liability is therefore "rarely suitable for summary judgment." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012); *but see Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing claim against individual as employer under the FLSA because plaintiffs only alleged her status as the owner and chairperson of the employer company and failed to allege any facts establishing her power to control the plaintiff workers or otherwise satisfy the economic realities test); *Spiteri v. Russo*, No. 12 Civ. 2780 (MKB), 2013 WL 4806960, at *61 (E.D.N.Y. Sept. 7, 2013) (granting summary judgment in favor of defendants where, even accepting the plaintiff's factual allegations as true, the plaintiff failed to demonstrate that the economic realities of the plaintiff's work established an employer-employee relationship).

Here, Defendants argue that the Individual Defendants must be dismissed, and Plaintiff offers no opposition to this argument. Without argument or evidence as to whether these two individuals possessed the power to control Plaintiff's work or otherwise satisfy the economic realities test, the Court GRANTS Defendants' motion for summary judgment as to Alfons and Leon Melohn. *See, e.g., Collins v. Goord*, 581 F. Supp. 2d 563, 579 (S.D.N.Y. 2008) (granting summary judgment to defendant on claim as abandoned where claim not mentioned or argued in

plaintiff s opposition brief); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d

233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned where plaintiff made no argument in

support of claim in summary judgment opposition papers).

## V. CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

Defendants' motion for summary judgment as to the Individual Defendants Alfons and Leon

Melohn is GRANTED. The Clerk of the Court is respectfully directed to dismiss Alfons and

Leon Melohn as Defendants from this action. Defendants' motion for summary judgment as to

Plaintiff's FLSA claims and Defendants' counterclaim for breach of contract is DENIED, and

the Court dismisses Defendants' counterclaim for breach of contract as a matter of law.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 68. The

parties are directed to appear for a status conference on **March 16, 2017 at 11:00 A.M.**

It is SO ORDERED.

Dated:    February 27, 2017
          New York, New York

                                              Edgardo Ramos, U.S.D.J.